**Affirmed in part and Reversed in part and Opinion Filed December 12, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-18-01421-CV**

**WAL-MART STORES, INC.; WAL-MART STORES EAST, LP; WAL-MART LOUISIANA, LLC; SAM'S EAST, INC., AND SAM'S WEST, INC., Appellants**
**V.**
**XEROX STATE & LOCAL SOLUTIONS, INC. A/K/A/, F/K/A ACS STATE & LOCAL SOLUTIONS, INC., Appellee**

**On Appeal from the 44th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-15-13629**

## MEMORANDUM OPINION

Before Chief Justice Burns, Justice Nowell, and Justice Garcia
Opinion by Chief Justice Burns

This case is before us on remand from the Supreme Court of Texas. *See Wal-Mart Stores, Inc. v. Xerox State & Local Solutions, Inc.*, 663 S.W.3d 569 (Tex. 2023) (*Wal-Mart 2*) (affirming in part and reversing in part *Wal-Mart Stores, Inc. v. Xerox State & Local Solutions, Inc.*, 646 S.W.3d 546 (Tex. App.—Dallas 2020) (mem op.) (*Wal-Mart 1*)). The supreme court remanded the case to us to review the trial court's orders granting Xerox's motions for summary judgment on Wal-Mart's causes of action for negligence and negligent misrepresentation.

This appeal is brought by Wal-Mart Stores, Inc., Wal-Mart Stores, East, L.P, Wal-Mart Louisiana, LLC, Sam's East, Inc., and Sam's West, Inc. (Wal-Mart) from the trial court's granting summary judgment on Wal-Mart's claims against Xerox State & Local Solutions, Inc. a/k/a, f/k/a ACS State & Local Solutions, Inc. (Xerox). Wal-Mart brings three issues contending (1) following the supreme court's opinion, this Court should reverse the order granting in part Xerox's first motion for summary judgment and remand the claims subject to that order; (2) the trial court erred by granting Xerox's traditional and no-evidence motion for summary judgment on Wal-Mart's claim for negligence; and (3) the trial court erred by granting Xerox's traditional and no-evidence motion for summary judgment on Wal-Mart's claim for negligent misrepresentation.

We reverse the trial court's judgment to the extent the trial court granted Xerox's first motion for summary judgment. We conclude the economic loss rule bars Wal-Mart's claims for negligence and negligent misrepresentation that were subject to the second motion for summary judgment, and we affirm the trial court's judgment to the extent it grants Xerox's second motion for summary judgment. We remand the cause to the trial court for further proceedings.

# BACKGROUND[1]

The Wal-Mart plaintiffs are retailers in sixteen states[2] who permit customers to purchase groceries under the Supplemental Nutrition Assistance Program (SNAP) using Electronic Benefit Transfer (EBT) accounts and cards. SNAP is a program of the U.S. Department of Agriculture (USDA). The program is administered by the federal Food & Nutrition Service (FNS) and state agencies and is funded by the USDA.

The SNAP EBT cards work like debit cards, with each SNAP beneficiary having an account into which benefits are paid monthly. The beneficiary, when purchasing groceries from a retailer in the SNAP program, uses the EBT card and enters a four-digit Personal Identification Number (PIN) to make purchases. The funds for the amount of the purchase are transferred from the beneficiary's account to the retailer.

Federal and state agencies administer SNAP by contracting with EBT contractors to administer the cardholder management systems and to process the retail transactions for redemption of SNAP benefits. The sixteen states involved in this case contract with Xerox to provide EBT contractor services.

---

[1] The background facts are also described in this Court's and the supreme court's earlier opinions. *See Wal-Mart 2*, 663 S.W.3d at 572–76; *Wal-Mart 1,* 646 S.W.3d at 551–554; *see also* 7 C.F.R. § 274.8 (functional and technical EBT system requirements).

[2] Those states are Alabama, California, Georgia, Illinois, Iowa, Louisiana, Maine, Maryland, Massachusetts, Michigan, Mississippi, New Jersey, Ohio, Oklahoma, Pennsylvania, and Virginia. *See Wal-Mart 2*, 663 S.W.3d at 573 n.6.

Retailers, like Wal-Mart, contract with third-party processors to operate the processing system for routing the EBT transactions to Xerox. Wal-Mart retained First Data Corporation as its third party processor.

In a typical SNAP transaction involving Wal-Mart, a purchaser uses the SNAP EBT card at the retailer's point-of-sale (POS) device and enters the PIN. The device sends the transaction information to Wal-Mart's third-party processor, First Data. First Data sends the information to Xerox's network gateways, which it calls mini-switches. Xerox's mini-switches route the information to the applicable state database to either approve or deny the transaction. The reasons for denying a transaction include insufficient funds in the beneficiary's SNAP account or because the purchaser did not enter the correct PIN. After the determination is made whether to approve or deny the transaction, Xerox's host-computer sends a response code through its mini-switch to First Data. First Data formats the response code according to instructions from Wal-Mart and forwards that response code to Wal-Mart's POS device. The codes received at the POS device indicate whether the transaction was approved or denied or whether the transaction needs to be resubmitted. Xerox's computers would also send codes for other situations, including that the transaction could not be processed because the database was not available.

Saturday mornings are a peak SNAP transaction period at Wal-Mart. On a Saturday morning, October 12, 2013, starting at about 9:50 a.m. Central Time and

–4–

continuing for over ten hours, Wal-Mart's SNAP EBT transactions did not follow this typical procedure.

That morning, Xerox was performing annual preventative maintenance at its Dallas Data Center. The Dallas Data Center houses the SNAP databases for the sixteen states. A federal regulation requires scheduled maintenance involving "downtime" for the transaction-processing system to take place during off-peak shopping hours. *See* 7 C.F.R. § 274.8(b)(2)(i). During the maintenance, power was lost to the whole complex of buildings, including the SNAP databases and the onsite secondary backup databases. This meant SNAP EBT transactions could not be processed using the Dallas Data Center because the power outage stopped access to the databases. Xerox had an offsite backup center in Pittsburgh, but it did not route SNAP EBT transactions to it during the system outage. Power to the state databases was not restored until 5:00 p.m. The EBT system became fully operational again at 9:25 p.m.

When the SNAP EBT transaction-approval system is inaccessible, retailers may make sales to SNAP beneficiaries and later seek payment using one of two procedures. Under the manual purchase system, for each transaction, the retailer prepares a written voucher signed by the beneficiary for the amount of the purchase. 7 C.F.R. § 274.8(d). The retailer later presents the vouchers for the sales to Xerox for payment. Wal-Mart did not use this system because it was too slow for its high-volume check-out lanes. The other system, store-and-forward transactions,

permits retailers to electronically store the EBT transactions and forward the transactions for payment to Xerox "one time within 24 hours of when the system again becomes available." 7 C.F.R. § 274.8(e)(1). This is the system Wal-Mart used during the system outage. Wal-Mart's policy during EBT system outages was to continue making SNAP EBT transactions by electronically storing the transactions for later processing while imposing a $100 limit per transaction.

Wal-Mart stayed in contact with Xerox during the outage. Some evidence in the record shows that at different times, Xerox's employees believed they had restored the system and that the state databases containing the beneficiary account information were connected to the system, only to learn that they were not. At those times, Wal-Mart sent some of the stored transactions to be processed. However, because the databases were not fully operational, Wal-Mart received codes other than approval. When the store-and-forward transactions were not approved, Wal-Mart's computers removed the transactions from the store-and-forward queue, dismantled the transactions, and removed the PINs. Wal-Mart could not resubmit the transactions after it had dismantled them and removed the PINs.

Wal-Mart alleged it used the store-and-forward transactions procedure on more than 420,000 EBT transactions during the outage. Wal-Mart asserts that about 55,000, thirteen percent, of those transactions, when resubmitted, were not processed, causing losses of more than $2.3 million. Wal-Mart also alleged it incurred losses of more than $1.6 million from the store-and-forward transactions

–6–

that were processed because about 32,000 transactions were denied due to the beneficiary having insufficient funds in the SNAP account or because the purchaser did not enter the correct PIN. Wal-Mart also alleged it suffered losses of about $450,000 for spoiled food and restocking costs because customers in Louisiana and Missouri abandoned shopping carts full of food.[3]

Wal-Mart sued Xerox for breach of express and implied contract, negligence, negligent misrepresentation, and promissory estoppel. In March 2017, Xerox filed its first motion for summary judgment. Xerox moved for summary judgment on all of Wal-Mart's claims, arguing that pursuant to a federal regulation, Wal-Mart assumed the risk of using the store-and-forward-transactions method of obtaining payment for SNAP EBT transactions during the outage. *See* 7 C.F.R. § 274.8(e)(1) ("State agencies may opt to allow retailers, *at the retailer's own choice and liability*, to perform store-and-forward transactions when the EBT system cannot be accessed for any reason." (emphasis added)). The trial court granted Xerox's first motion for summary judgment on that ground, but only as to the transactions that would have

---

[3] According to a CBS news story from Louisiana that was part of Wal-Mart's response to Xerox's second motion for summary judgment, word spread that Wal-Mart could not verify the amounts in shoppers' SNAP accounts, and "shoppers swept through the aisles at two stores and bought as much as they could carry." Although Wal-Mart had imposed a $100-limit per transaction during the system outage, these stores did not impose that limit and approved the large EBT transactions to "get the sales, so the store could get a bonus." Police were called to maintain order at the stores. When shoppers learned that the EBT processing system had been restored and account balances were again being verified, shoppers abandoned "dozens of carts, piled high with merchandise." An internal Wal-Mart e-mail in the record concerning losses at Louisiana stores suggests the heavy shopping may also have been due to a rumor that EBT cards would not be accepted after the weekend due to a government shut-down. The e-mail quotes an AP report that shoppers in one of the Louisiana stores abandoned shopping carts full of groceries when the store announced it would enforce the $100 transaction limit.

been denied because the beneficiaries' SNAP accounts lacked sufficient funds or because the beneficiaries entered the wrong PIN. The trial court otherwise denied the motion for summary judgment.

Xerox then filed a second motion for summary judgment asserting both traditional and no-evidence grounds on Wal-Mart's remaining claims. The trial court granted Xerox's second motion for summary judgment, which effectively rendered judgment that Wal-Mart take nothing on all claims. The trial court did not specify the grounds on which the second motion for summary judgment was granted.

Wal-Mart appealed, and this Court affirmed the trial court's judgment, holding the federal regulation, 7 C.F.R. § 274.8(e)(1), placed the risk of loss on retailers who used store-and-forward transactions, and this regulation supported the trial court's grant of both motions for summary judgment.[4] *See Wal-Mart 1*, 646 S.W.3d at 555, 556. We also held the trial court correctly granted summary judgment on the breach-of-contract claim because Wal-Mart was not a third-party beneficiary of Xerox's contracts with the states and First Data. *See id.* at 562.

The supreme court affirmed our decision in part and reversed in part. The supreme court concluded we correctly determined Wal-Mart was not a third-party beneficiary of Xerox's contracts with the government agencies and First Data, and it agreed with our conclusion that the trial court correctly granted Xerox's motion

---

[4] This is the supreme court's interpretation of *Wal-Mart 1*. *See Wal-Mart 2*, 663 S.W.3d at 581–82 & n.56.

for summary judgment on Wal-Mart's breach-of-contract claim. *Wal-Mart 2*, 663 S.W.3d at 585, 589. However, the supreme court disagreed that 7 C.F.R. § 124.8(e)(1) immunized Xerox from liability to Wal-Mart for the store-and-forward transactions. The court held the regulation imposed liability for store-and-forward transactions on the retailer in disputes between the retailer and the USDA, state agencies, and SNAP beneficiaries. *Id.* at 577–580. But the regulation was not intended to allocate liability between retailers like Wal-Mart and EBT contractors like Xerox.[5] *Id.* at 580. The court stated that our decision "effectively held that the federal regulations preempted those common-law claims" and that Xerox failed to overcome the presumption against preemption. *Id.* at 580–81. The supreme court remanded Wal-Mart's negligence and negligent misrepresentation claims to this Court for further proceedings. *Id.* at 582.

**TRANSACTIONS SUBJECT TO FIRST SUMMARY JUDGMENT ORDER**

In its first issue on remand, Wal-Mart contends we should reverse and remand without further consideration the transactions subject to the first summary judgment. The supreme court's opinion reversed our affirmance of the trial court's partial grant

---

[5] The supreme court stated that Xerox's interpretation of section 274.8:

> would allow an EBT contractor to escape independently negotiated contractual obligations with a retailer and avoid liability not only for its negligent conduct but also for intentional torts related to store-and-forward losses. If EBT contractors are not incentivized to minimize the risks of outages, retailers might be more likely to turn away SNAP customers during outages, limiting their options to purchase food. Such a construction runs counter to regulatory objective.

*Wal-Mart 2*, 633 S.W.3d at 580.

of Xerox's first motion for summary judgment on the only ground presented, that 7 C.F.R. § 274.8(e)(1) shifted liability for the use of store-and-forward transactions onto the retailer and absolved Xerox of liability for losses incurred in those transactions.

The trial court granted the first motion for summary judgment only as to the transactions denied "because the EBT benefit recipient either lacked sufficient funds in their accounts to cover purchases or because the EBT benefit recipient entered an invalid PIN number." Xerox's second motion for summary judgment addressed the elements of Wal-Mart's causes of action, arguing that it proved as a matter of law that Wal-Mart could not establish certain elements or that Wal-Mart had no evidence of certain elements.

The question in this issue is whether we can reach the insufficient-funds and wrong-PIN damages in addressing Xerox's second motion for summary judgment. The introduction to Xerox's second motion for summary judgment asked the trial court to award summary judgment "on Wal-Mart's remaining claims." The phrase "remaining claims" means those claims that were not determined in the first summary judgment, and the phrase excludes the claims that were determined in the first summary judgment. The substance of Xerox's second motion for summary judgment makes clear that the second motion for summary judgment is not applicable to the insufficient-funds/wrong-PIN damages under Wal-Mart's

negligence and negligent misrepresentation causes of action. Xerox stated in the second motion:

> This Court previously granted summary judgment on Wal-Mart's claims with respect to those "EBT transactions that were denied . . . because the EBT benefit recipient either lacked sufficient funds in their accounts to cover their purchases or because the EBT benefit recipient entered an invalid PIN number." Thus Wal-Mart's pending damages claim[s] *relate entirely* to the remaining Store-and-Forward transactions that Xerox allegedly "failed to process" because of a purported system error . . . .

(Emphasis added.)

Xerox's discussion of the issues in its second motion for summary judgment concerns only Wal-Mart's damages from the otherwise-valid store-and-forward transactions that Xerox did not process and the damages from the abandoned shopping carts. The second motion for summary judgment did not purport to address Wal-Mart's claims to the extent they concerned the damages from the transactions denied for insufficient funds and entry of wrong PINs.

The supreme court has discussed the extent of the appellate court's authority in reviewing summary judgment orders:

> [I]n an appeal from a summary judgment, issues an appellate court may review are those the movant actually presented to the trial court. However, rule 166a does not prevent an appellate court from affirming the judgment on other grounds the parties properly raised before the trial court, when the trial court grants summary judgment specifically on fewer than all grounds asserted. Rather, our rules of appellate procedure give appellate courts the authority, when reviewing judgments of lower courts, to render the judgment or decree that the court below should have rendered.

*Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996) (citation omitted).

In this case, Xerox's second motion for summary judgment did not challenge the evidentiary sufficiency of the elements of Wal-Mart's negligence and negligent misrepresentation claims to the extent they concerned Wal-Mart's alleged damages for transactions denied due to insufficient funds and wrong PINs. Because the issue of whether any evidence supported or conclusive evidence opposed the elements of these parts of Wal-Mart's negligence and negligent misrepresentation claims was not presented to the trial court, we cannot consider them.

Xerox argues this conclusion is "impractical" and that "[n]othing is  gained by remanding 33,000 tort claims for Xerox to present a revised summary judgment motion, based on the very opinion that remanded those claims in the first place." However, Xerox cites no authority that would support our affirming a summary judgment as to a claim or portion of a claim that was not presented to the trial court in the motion for summary judgment.

Xerox's sole ground for summary judgment on Wal-Mart's tort claims for damages from the transactions being denied for insufficient funds and wrong PINs was that those claims were barred by 7 C.F.R. § 124.8(e)(1). The supreme court held that ground did not support summary judgment. Xerox could have made clear that its second motion for summary judgment applied to all of Wal-Mart's alleged damages, including those for transactions denied due to insufficient funds and wrong

PINs. However, Xerox did not do so, and its discussion in its second motion for summary judgment made clear that its arguments applied only to Wal-Mart's claims for other damages.

We sustain Wal-Mart's first issue. Based on the supreme court's opinion in *Wal-Mart 2*, we conclude the trial court erred to the extent it granted Xerox's first motion for summary judgment on Wal-Mart's claims for negligence and negligent misrepresentation.[6]

## STANDARD OF REVIEW

Wal-Mart's second and third issues on remand contend the trial court erred by granting Xerox's second motion for summary judgment, which asserted both traditional and no-evidence grounds for summary judgment.

We review the trial court's summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). A party moving for traditional summary judgment has the burden to prove that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). "When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Valence Operating Co. v.*

---

[6] We make no determination in this opinion whether the economic loss rule would bar Wal-Mart's recovery on the transactions denied for insufficient funds and wrong PINs.

*Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). A no-evidence summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003). Accordingly, we review the evidence in the light most favorable to the non-movant, disregarding all contrary evidence and inferences. *Id.* at 751. "A no evidence point will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact." *Id.* Thus, a no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. TEX. R. CIV. P. 166a(i); *Chapman*, 118 S.W.3d at 751. Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *Chapman*, 118 S.W.3d at 751. More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Id.*

## NEGLIGENCE

In its second issue on remand, Wal-Mart contends the trial court erred by granting Xerox's traditional and no-evidence motion for summary judgment on Wal-Mart's negligence claim.

"Negligence actions in Texas require 'a legal duty owed by one person to another, a breach of that duty, and damages proximately caused by the breach.'" *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009) (quoting *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002)). Xerox moved for traditional summary judgment on the grounds that Xerox owed no duty to Wal-Mart and that Wal-Mart was the producing cause of its own damages. Xerox also moved for summary judgment on the grounds that Wal-Mart had no evidence Xerox had a duty, breached that duty, or that Wal-Mart suffered damages proximately caused by the breach.

### The Economic Loss Rule

We first consider whether Xerox owed a duty to Wal-Mart. The plaintiff must establish the existence and violation of a duty by the defendant, but the existence of duty is a question of law for the courts to decide from the facts and circumstances surrounding the occurrence. "The threshold inquiry in a negligence case is duty." *Elephant Ins. Co., LLC v. Kenyon*, 644 S.W.3d 137, 144 (Tex. 2022) (quoting *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990)). Whether a defendant owes a plaintiff a duty "is a question of law for the court to

–15–

decide from the facts surrounding the occurrence in question." *Id.* (quoting *Greater Houston*, 801 S.W.2d at 525).

"The nature of the injury most often determines which duty or duties are breached." *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986). Part of the question of duty is the doctrine known as the economic loss rule. *Trans-Gulf Corp. v. Performance Aircraft Servs., Inc.*, 82 S.W.3d 691, 694 (Tex. App.— Eastland 2002, no pet.) ("The economic loss rule is a rule of 'duty' which focuses on the nature of the loss claimed in order to determine the duty in tort owed by the alleged tortfeasor."). Under that doctrine, there is generally no common-law tort duty "to avoid the unintentional infliction of economic loss on another." RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR ECONOMIC HARM § 1(1) (2020) (Restatement (Third)). Instead, "[w]hen the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." *Jim Walter Homes*, 711 S.W.2d at 618; *see also Clark v. PFPP Limited P'ship*, 455 S.W.3d 283, 288 (Tex. App.—Dallas 2015, no pet.) (quoting *Jim Walter Homes*). This doctrine, called the economic loss rule, may apply even when there is no contract between plaintiff and defendant.[7] *See LAN/STV v. Martin K. Eby Constr. Co.*, 435 S.W.3d

---

[7] Xerox pleaded that Wal-Mart's "negligent and negligent misrepresentation claims are barred, in whole or in part, by the economic loss rule." Xerox's second motion for summary judgment briefly asserted the economic loss rule in footnotes to the argument concerning negligence and negligent misrepresentation. Xerox's "Reply Brief in Support of Its Motion for Summary Judgment" discussed and applied the economic loss rule to the facts of the case, asserting "the contracts are between Xerox and the sixteen states, to which Wal-Mart is not a party, and cover the entire subject matter at issue here." We conclude the economic loss rule was before the trial court.

234, 243–50 (Tex. 2014) (economic loss rule barred negligent misrepresentation claim by construction contractor against architect for contractor's increased costs from architect's faulty plans when there was no contract between contractor and architect); *Clark*, 455 S.W.3d at 288 (economic loss rule barred plaintiff's negligence claim against defendant who had no contract with plaintiff).[8]

In *LAN/STV v. Martin K. Eby Constr. Co.*, the supreme court discussed the economic loss rule extensively, discussing and applying portions of the Restatement (Third). The court noted that one commentator had described Texas's law on the subject as "murky." *LAN/STV*, 435 S.W.3d at 241. "[W]hether and how to apply the economic loss rule 'does not lend itself to easy answers or broad pronouncements.'" *Id.* at 245 (quoting *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 419 (Tex. 2011)). There is no bright-line rule for application of the rule. For both negligence and negligent misrepresentation, whether and how to apply the economic loss rule "depends on an analysis of its rationales in a particular situation." *Id.* at 245–46.

---

[8] In *Clark*, the plaintiff purchased a vehicle from a third party, but the vehicle had been stolen from the defendant dealership. Plaintiff turned over the vehicle to the sheriff and then sued the dealership for the purchase price paid to the third party. Plaintiff alleged the dealership's negligence resulted in the car being stolen and sold to plaintiff. We held the economic loss rule barred the plaintiff's claim because plaintiff's claim was based on the third party's breach of the sales contract for the vehicle. *See Clark*, 455 S.W.3d at 289–90 ("[T]he only injury Clark claimed due to Planet Dodge's allegedly negligent conduct was the purely economic harm she suffered when Santoy breached the contract. Under these circumstances, the economic loss rule bars Clark from recovering this loss from Planet Dodge based on a negligent hiring, supervision, and retention claim.").

.

The rationales underlying the economic loss rule are prevention of indeterminate and disproportionate liability[9] and deference to contract. *Id.* at 240–41 (quoting Restatement (Third) § 1, cmt. c). Wal-Mart's negligence claim involves both factors.

In its response to Xerox's second motion for summary judgment, Wal-Mart asserted Xerox's common-law negligence duties were (1) the federal regulations relating to SNAP EBT processing that set forth the standard of care associated with the duties imposed on Xerox "for the benefit of all EBT stakeholders, including merchants"; and (2) the duties Xerox voluntarily undertook for "processing EBT transactions submitted by FNS-authorized retailers, which established a common-law negligence duty flowing from Xerox in favor of Walmart."[10]

Wal-Mart's negligence claim involves three assertions of Xerox's breach of duties causing damages. First, Wal-Mart alleged Xerox negligently caused the disruption of the EBT processing system, and Xerox caused all of Wal-Mart losses

---

[9] The supreme court quoted Professor William Powers's law review article on the economic loss rule to explain:

> One rationale for precluding recovery of pure economic loss in these cases is a fear that the purely economic consequences of a defendant's negligence are not limited by the normal tort limit on the scope of a negligent defendant's liability, foreseeability on a case-by-case basis.

*LAN/STV*, 435 S.W.3d at 239 n. 22 (quoting William Powers, Jr. & Margaret Niver, *Negligence, Breach of Contract, and the "Economic Loss" Rule*, 23 TEX. TECH L. REV. 477, 481 (1992)). As the supreme court phrased it: "Liability for economic loss directly resulting from physical injury to the claimant or his property—such as lost wages or medical bills—is limited by the scope of the injury. Liability for a standalone economic loss is not." *Id.* at 239.

[10] Some of Wal-Mart documents refer to it is "Walmart."

from unpaid store-and-forward transactions. Second, Wal-Mart alleged Xerox breached duties by negligently determining that it had restored the transaction-processing system, and that Wal-Mart suffered damages by forwarding stored transactions when the system had not been restored, the transactions were not processed, and Wal-Mart was not paid for those transactions. Third, Wal-Mart alleged Xerox's breach of duties caused shoppers to abandon grocery carts filled with groceries before checking out resulting in losses for the destruction of perishable food items and the restocking costs of nonperishable items.

We conclude the economic loss rule bars Wal-Mart's claim that Xerox is liable in negligence under the first and second negligence claims. We also conclude that the economic loss rule does not apply to the damages from the abandoned shopping carts but that Xerox had no duty to prevent those damages or the damages are too remote for Xerox's negligence to be the proximate cause of those damages.

*Xerox's Liability for All of Wal-Mart's Damages from Store-and-Forward Transactions*

This discussion concerns the economic loss rule and the trial court's granting Xerox's motion for summary judgment on Wal-Mart's claim that Xerox is liable for all its losses from store-and-forward transactions where the beneficiary had sufficient funds in the account and the purchaser entered the correct PIN. The sixteen states where Wal-Mart suffered its losses included thousands of retailers besides Wal-Mart. Wal-Mart alleged its customers made "hundreds of thousands of EBT transactions" during the ten-hour outage.

We first consider the economic-loss rule's rationale of prevention of indeterminate and disproportionate liability. To authorize Wal-Mart's recovery in negligence for all of its losses during the outage from the store-and-forward transactions[11] could lead to Xerox facing practically unlimited tort liability for commercial losses from all the retailers in the sixteen states during the outage who used store-and-forward transactions during the system-processing outage. The SNAP EBT program exists by the statutes and regulations of federal and state agencies and by contracts between the government agencies with contractors like Xerox and between the contractors and third party processors like First Data. Wal-Mart presents no evidence that the statutes, regulations, and contracts imposed unlimited liability on EBT contractors like Xerox in the event of a system outage. Instead, the evidence suggests the states and Xerox entered into contracts intended to limit Xerox's liability in this situation.

Concerning the factor of deference to contract, the supreme court explained that the economic loss rule bars recovery in tort when the parties used, *or could have used*, contracts to clarify the duties and liabilities of each participant in a commercial enterprise:

---

[11] Unless otherwise set forth, our discussion in the rest of the opinion about Wal-Mart's losses from store-and-forward transactions concerns only those transactions where there were sufficient funds in the beneficiary's account to cover the transaction and the purchaser entered the correct PIN. As discussed above, Wal-Mart's damages from store-and-forward transactions where the beneficiary's account lacked sufficient funds or the purchaser entered the incorrect PIN were not part of Xerox's second motion for summary judgment. Our decision in this case makes no holding concerning the application of the economic loss rule to the transactions involving insufficient funds or the entry of wrong PINs. Our doing so would constitute an advisory opinion.

> Though there remains the possibility that a contractor may not do so, we think the availability of contractual remedies must preclude tort recovery in the situation generally because, as stated above, "clarity allows parties to do business on a surer footing". "Where contracts might readily have been used to allocate the risk of a loss," the *Restatement* observes, "a duty to avoid the loss is unlikely to be recognized in tort—not because the economic loss rule applies, but simply because courts prefer, in general, that economic losses be allocated by contract where feasible." We see no reason not to apply the economic loss rule to achieve this end.

*LAN/STV* at 248 (footnotes omitted) (quoting Restatement (Third) § 6 cmt. b, § 3 cmt. f.). In this case, the parties' relationships and liabilities are covered by a network of federal regulations and state contracts.

The record shows eleven states' agreements with Xerox may require Xerox to pay for retailers' losses suffered during transaction-processing outages, but limited to a maximum amount. For example, Louisiana's requirements for an EBT contractor (Xerox's position) included:

> The contractor shall be liable for off-line transactions in the event the contractor's EBT system is not functional. The floor limit for off-line transactions when the contractor's system is down shall be $50.00. Retailers who process off-line transactions while the contractor's system is not functional are liable for any amounts in excess of $50.00.

Similarly, the "Quest Rules" applicable to Xerox's performance in thirteen of the sixteen states provide for Xerox's liability in the event the processing system failed. Section 10.3 of the Quest Rules requires a "Processor," such as Xerox, to "indemnify and hold harmless each other participant," which includes a "Merchant" such as Wal-Mart:

against all claims, losses . . . that are incurred as a result of a Transaction or attempted Transaction and that arises out of: . . .

> b. Malfunction of or failure to operate the CAS [Cardholder Authorization System], Acquirer's, or network's system for processing and routing Transactions; . . .

> d. The failure of the Processor to comply, as to any Transaction, with any applicable law;

> e. The negligence or fraudulent conduct of the Processor . . . .

The five states (California, Iowa, Maryland, Michigan, and Ohio) for which the record has no evidence of express provisions in their contracts with Xerox for paying retailers' losses have adopted the Quest Rules. *See Wal-Mart 2*, 663 S.W.3d at 586 n.82 (listing the states in this case that have incorporated the Quest Rules into their agreements). A Xerox executive acknowledged in an internal e-mail Xerox's contractual obligations under the agreements: "Many of our EBT states have a contractual requirement for us to stand-in for $25–$40/transaction during system outages that are our fault. This would qualify."

The federal regulations, Quest Rules, and the states' other contractual requirements that Xerox provide compensation for retailers' losses during system outages obviate the need for imposing a common-law duty.[12] *See LAN/STV*, 435

---

[12] Xerox may have moved for summary judgment on the ground that section 3.7 of the Quest Rules barred Wal-Mart's recovering damages. Section 3.7 of the Quest Rules provides, "Each Acquirer and its respective Merchants shall bear the risk of denial, for any reason, of a Store-and-Forward Food Stamp Transaction or Manual Food Stamp Transaction for which Telephone Authorization was not received." Xerox did not conclusively prove that it "deni[ed]" the transactions subject to the second motion for summary judgment. Instead, some evidence shows the codes it returned to First Data were codes indicating the transactions were not processed, and it was First Data, at Wal-Mart's directions, that changed the codes to denials. Whether section 3.7 of the Quest Rules bars Wal-Mart's claims for the transactions that were

S.W.3d at 248 ("[W]e think the availability of contractual remedies must preclude tort recovery in the situation generally because . . . 'clarity allows parties to do business on a surer footing'." (quoting Restatement (Third) § 6 cmt. b)); *Mission Petroleum Carriers, Inc. v. Solomon*, 106 S.W.3d 705, 715 (Tex. 2003) (drug-testing regulations "serve both as an incentive for employers to carefully abide by those protocols and as a safe harbor for employees whose test results are tainted by unacceptable breaches of collection procedures. We therefore decline to impose a common-law duty on employers who conduct in-house urine specimen collection under the DOT regulations."); *Trebuchet Siege Corp. v. Pavecon Com. Concrete, Ltd.*, No. 05-12-00945-CV, 2014 WL 4071804, at *7 (Tex. App.—Dallas Aug. 19, 2014, no pet.) (mem op.) ("Application of the economic loss rule is particularly appropriate here, where permitting Trebuchet to sue Pavecon for economic loss would disrupt the risk allocations that Trebuchet worked out in its contract with DFM, and that DFM, in turn, worked out in its contract with Pavecon."); *Hou-Tex, Inc. v. Landmark Graphics*, 26 S.W.3d 103, 107 (Tex. App.—Houston [14th Dist.] 2000, no pet.) ("Permitting Hou-Tex to sue Landmark for economic losses would disrupt the risk allocations that Hou–Tex worked out in its contract with Saguaro and the risk allocations in Landmark's beta agreement or licensee agreement with SeisVision's licensees."); *see also Houston Area Safety Council v. Mendez*, 671

---

fully processed and denied for insufficient funds and wrong PINs is not before us, and we make no holding on that issue.

S.W.3d 580, 594 (Tex. 2023) (Young, J., concurring) ("In short, the existence of a regulatory scheme governing the type of conduct alleged to constitute negligence—at least when there is no impediment to the political branches' continued regulation—generally should foreclose the imposition of a common law negligence duty.").

Even if Wal-Mart actually has no statutory, regulatory, or contractual remedy, the fact remains that the regulatory and contractual framework of the SNAP EBT system could have provided a remedy for retailers like Wal-Mart using store-and-forward transactions during an EBT system outage. Wal-Mart is not an unsophisticated retailer in the SNAP EBT program. Wal-Mart could have negotiated with the state and federal agencies for inclusion of retailer protections for store-and-forward transactions in the event of system outages before participating with its thousands of stores. Or Wal-Mart could have purchased insurance in the event of losses from an EBT outage. *See LAN/STV*, 435 S.W.3d at 248–50 (discussing balancing of the duties of risk prevention through bargaining and insurance).

It is inappropriate for the courts of Texas to disrupt the system of agreements of the different states with Xerox for protection of those states' retailers.[13] Nor is it appropriate for Texas's courts to provide common-law protection for Wal-Mart when the statutes, regulations, and contracts governing the SNAP EBT program

---

[13] The record does not show whether the states have attempted to recover Wal-Mart's and their other retailers' losses during the outage pursuant to the Quest Rules and their agreements with Xerox.

failed to do so. We conclude the economic loss rule precludes our finding Xerox had a general common-law duty to prevent Wal-Mart's losses from the store-and-forward transactions subject to Xerox's second motion for summary judgment.

*Xerox's Negligent Determination That the Processing System Was Restored*

Wal-Mart alleged Xerox negligently determined during the processing-system outage that the system had been restored. Wal-Mart's injury was the purely economic loss of the amount of each transaction. Applying the economic loss rule's rationale of prevention of indeterminate and disproportionate liability, finding Xerox liable for negligence for its incorrect determination that the transaction processing system was restored could lead to Wal-Mart's unlimited liability to all retailers in the sixteen states using store-and-forward transactions during the outage. As discussed above, the regulations and contracts do not show that the government agencies envisioned such liability for the SNAP EBT contractor. Instead, the documents show the states intended Xerox's liability for its negligence causing losses to retailers to be pursuant to the agreements between Xerox and the governments. Likewise, the rationale of deference to contract supports application of the economic loss rule. As discussed above, the evidence shows a network of regulations and contracts governed the parties' relationships and liabilities. Accordingly, we conclude the economic-loss rule bars this part of Wal-Mart's negligence claim.

## Abandoned Shopping Carts

Wal-Mart's other category of damages is what its expert witness described as a "disruption in business" due to the system outage "incurring damages in the amount of $449,920 caused by losses associated with carts of abandoned groceries as a result of the outage."

The evidence includes two different explanations for the abandoned grocery carts. An internal e-mail at Wal-Mart reviewing a run on stores during the processing-system outage in Louisiana and Missouri shows those stores did not impose the $100 purchase limit for SNAP EBT transactions. When the stores finally imposed the $100 purchase limit and announced it, customers abandoned their grocery carts. The second explanation comes from a CBS news article, which explained that shoppers abandoned their grocery carts when it was announced that SNAP account balances were again accessible and purchases could not exceed the amounts in the beneficiaries' accounts.

The evidence shows these damages are not purely economic losses because they include property damage, namely, the perishable groceries that had to be thrown out. They also are not contractual losses because the groceries were abandoned without being sold. Therefore, they are not subject to the economic loss rule.

Whether Xerox had a duty to prevent these losses depends on whether it was foreseeable Wal-Mart would suffer non-contractual harm from the breach of a duty. "[B]efore liability will be imposed, there must be sufficient evidence indicating that

the defendant knew or should have known that harm would eventually befall a victim. Absent such a showing, a defendant is absolved of liability." *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 526 (Tex. 1990).

The evidence shows that the abandonment of the carts was not due to the *failure* of the transaction-processing system but was instead due to either the *restoration* of the transaction-processing system or the individual stores' belated imposition of the $100 transaction limit. Wal-Mart presented no evidence that Xerox had a duty to control the actions of Wal-Mart's shoppers and prevent them from abandoning shopping carts full of food. Wal-Mart presented no evidence that Xerox knew or should have known that imposition of the $100 transaction limit or the restoration of the transaction-processing system would cause shoppers to abandon grocery carts full of food. The record contains evidence that the EBT transaction-processing system had failed on two other occasions when Xerox's Dallas Data Center had lost power,[14] but Wal-Mart presented no evidence its customers abandoned shopping carts and that Xerox knew of it during those other outages. We conclude Wal-Mart failed to establish the existence of a duty by Xerox to Wal-Mart.

To the extent the shoppers abandoning the carts knew their accounts lacked sufficient funds to purchase the items in the carts, the abandonment of the carts was

---

[14] Xerox's Vice President of Card Operations stated in an e-mail the day after the outage that this was the third incident. Previous outages occurred due to an ice storm and during "DR test to start up generators."

the result of their criminal intent to steal from Wal-Mart. Xerox had no duty to prevent theft and other criminal acts in Wal-Mart's stores. *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 756 (Tex. 1998) ("As a rule, a person has no legal duty to protect another from the criminal acts of a third person." (internal quotation marks omitted)).

Even if Xerox had a duty to Wal-Mart not to perform maintenance that could disable the transaction-processing system during peak transaction periods, and it breached that duty, Wal-Mart must have presented some evidence that this breach of duty proximately caused Wal-Mart's damages from the abandoned shopping carts. Xerox's second motion for summary judgment included the ground that Wal-Mart had no evidence that any breach of duty proximately caused injury to Wal-Mart.

Breach of a duty proximately causes an injury if the breach is a cause in fact of the harm and the injury was foreseeable. *Stanfield v. Neubaum*, 494 S.W.3d 90, 97 (Tex. 2016). "Cause in fact requires 'proof that (1) the negligent act or omission was a substantial factor in bringing about the harm at issue, and (2) absent the negligent act or omission ('but for' the act or omission), the harm would not have occurred.'" *Id.* (quoting *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 122 (Tex. 2009)). "If a negligent act or omission 'merely creat[es] the condition that makes the harm possible,' it is not a substantial factor in causing the harm as a matter of law." *Id.* (quoting *HIS Cedars Treatment*

–28–

*Ctr. of DeSoto, Tex. Inc. v. Mason*, 143 S.W.3d 794, 800 (Tex. 2004)). "A plaintiff proves foreseeability of the injury by establishing that 'a person of ordinary intelligence should have anticipated the danger created by a negligent act or omission.'" *Id.* (quoting *Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 478 (Tex. 1995)). "Conjecture, guess, and speculation are insufficient to prove cause in fact and foreseeability." *Id.*

Neither Wal-Mart's response to the motion for summary judgment nor its briefing on appeal addressed how Xerox's negligence proximately caused the abandoned grocery carts. Even if Xerox's negligence was a cause in fact of these damages, Wal-Mart provides no explanation of how Xerox could have anticipated the abandoned grocery carts. At most, Xerox's negligence created the condition that made the harm possible, but Xerox's conduct did not proximately cause the run on the stores and resulting abandoned shopping carts full of perishable merchandise.

## Conclusion

The summary judgment record conclusively established that, under the economic loss rule, Xerox had no general, common-law negligence duty to prevent Wal-Mart's losses from the store-and-forward transactions where the beneficiary had sufficient funds in the account but Xerox failed to fully process the transactions. Further, the record contains no evidence that Wal-Mart's losses from the abandoned grocery carts were foreseeable, meaning Wal-Mart failed to establish either that

–29–

Xerox had a duty to prevent these losses or that Xerox's negligence was a proximate cause of these damages.

We conclude the trial court did not err by granting Xerox's second motion for summary judgment on Wal-Mart's claim for negligence. We overrule Wal-Mart's second issue.

## NEGLIGENT MISREPRESENTATION

In its third issue, Wal-Mart contends the trial court erred by granting Xerox's second motion for summary judgment on Wal-Mart's cause of action for negligent misrepresentation.

These claims are based on Xerox's computers and employees representing to Wal-Mart that the transaction-processing system was again working, but when Wal-Mart sent the store-and-forward transactions, they were not processed because the state databases with the beneficiaries' account information were not functioning. When the store-and-forward transactions were not approved, First Data, following Wal-Mart's instructions, changed the codes received from Xerox for the unapproved transactions to denials. Wal-Mart then electronically dismantled those transactions so they could not be resubmitted, and Wal-Mart was not paid for these transactions.

The elements of a negligent misrepresentation cause of action are: (1) the representation is made by a defendant in the course of its business, or in a transaction in which the defendant has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not

–30–

exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex. 1999); *Bank of Tex., N.A. v. Glenny*, 405 S.W.3d 310, 313 (Tex. App.—Dallas 2013, no pet.); *see* RESTATEMENT (SECOND) OF TORTS § 552(1) (1977) (Restatement (Second)).[15]  It is immaterial whether the misrepresentations were made innocently or deliberately or with a fraudulent intent.  *Susser Petroleum Co. v. Latina Oil Corp.*, 574 S.W.2d 830, 832 (Tex. App.—Texarkana 1978, no writ).  The defendant's liability is limited to losses suffered by persons "for whose benefit and guidance he [the defendant] intends to supply the information or knows that the recipient intends to supply it."  *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 920 (Tex. 2010) (quoting RESTATEMENT (SECOND) OF TORTS § 552(2)(a)).

Xerox moved for summary judgment on the traditional ground that it made no false representation to Wal-Mart.  Xerox also moved for summary judgment on the grounds that Wal-Mart had no evidence that:  Xerox supplied false information to Wal-Mart; Xerox failed to exercise reasonable care in communicating the

---

[15] The supreme court adopted the definition of negligent misrepresentation presented in Restatement (Second) § 552. *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991).  Restatement (Third) § 5 defines negligent misrepresentation using different wording from the definition in Restatement (Second) § 552.  The Texas courts have not adopted the definition in Restatement (Third).

information; Wal-Mart justifiably relied on the information; any false representation caused injury to Wal-Mart.

## Pleading

Xerox argues, "Wal-Mart did not plead or otherwise properly identify" the misrepresentations. Texas is a notice-pleading state. Rule of Civil Procedure 47 requires a petition to contain "a short statement of the cause of action sufficient to give fair notice of the claim involved." TEX. R. CIV. P. 47(a). A petition is sufficient if a cause of action or defense "may be reasonably inferred from what is specifically stated, even if an element of the cause of action is not specifically alleged." *Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex. 1993). Fair notice is achieved "if the opposing party can ascertain from the pleading the nature and basic issues of the controversy, and what type of evidence might be relevant." *In re Greyhound Lines*, No. 05-13-01646-CV, 2014 WL 1022329, at *2 (Tex. App.—Dallas Feb. 21, 2014, orig. proceeding) (mem op.) (citing *Low v. Henry*, 221 S.W.3d 609, 612 (Tex. 2007)).

Wal-Mart pleaded: "Xerox negligently and recklessly informed Walmart that its system was restored and able to process the store and forward transactions when, in fact, it was not"; "Walmart justifiably relied on Xerox's representation that its system was restored and submitted the stored transactions to Xerox for processing as a result thereof; however, Xerox's system improperly denied the transactions because Xerox had not yet restored its connection to the States' databases"; "[a]s a result of Xerox's negligent and reckless misrepresentations, the transactions were

not processed in the ordinary course (and many were never ultimately processed at all), proximately causing Walmart's damages in an amount in excess of $4,000,000." Xerox did not specially except to the pleading. *See Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183, 187 (Tex. 1977) ("There is nothing in the record to indicate that Lipner was misled, surprised or prejudiced by this evidence. This is particularly true in view of the fact that Lipner filed no special exception that the pleadings were too general or ambiguous."). Xerox makes no argument that it was surprised by Wal-Mart's arguments. We conclude Wal-Mart's allegations were sufficient to provide Xerox the nature and basic issues of the controversy and what type of evidence might be relevant. We conclude Xerox's pleading argument lacks merit.

### Law of the Case

Xerox argues that we decided in our original opinion, *Wal-Mart 1*, that Wal-Mart had no evidence of a misrepresentation. Xerox asserts this was an alternative holding to the reversed federal-regulation holding and was not affected by the supreme court's reversal of *Wal-Mart 1*. Xerox maintains the holding in *Wal-Mart 1* still applies.

We disagree. We stated in *Wal-Mart 1*, "we conclude the 'misrepresentations' identified by Wal-Mart were not negligent misrepresentations that would subject Xerox to liability." *Wal-Mart 1*, 646 S.W.3d at 556. As the supreme court observed, that holding was based on this Court's interpretation of 7 C.F.R. § 274.8(e)(1) as placing the risk of store-and-forward transactions failing on Wal-Mart: "*Relying on*

–33–

*its interpretation of Section 274.8(e)(1)*[,] . . . the court of appeals then held that 'the misrepresentations identified by Wal-Mart were not negligent misrepresentations that would subject Xerox to liability.'" *Wal-Mart 2*, 663 S.W.3d at 581–82 & n.56 (emphasis added). The supreme court rejected that interpretation, and the conclusion in *Wal-Mart 1* cited by Xerox was vacated by the supreme court's reversal of our decision.

We conclude this Court's statement that "the 'misrepresentations identified by Wal-Mart were not negligent misrepresentations that would subject Xerox to liability" was reversed by *Wal-Mart 2* and is no longer a viable holding of this Court.

### Economic Loss Rule

The rationales underlying the economic loss rule are prevention of indeterminate and disproportionate liability and deference to contract. *LAN/STV*, 435 S.W.3d at 240–41 (quoting Restatement (Third) § 1, cmt. c.).

Wal-Mart's negligent misrepresentation claim involved two types of misrepresentations: Xerox's opening of its mini-switch, and the express representations made by Xerox's employees directly to Wal-Mart's and First Data's employees.

Wal-Mart asserts Xerox's opening of its mini-switch was a negligent misrepresentation. Wal-Mart presented some evidence, testimony of a First Data employee, that the opening of the mini-switch was a representation that the transaction-processing system was "up and operational." The opening of the mini-

switch was not just a representation to Wal-Mart but was a representation to all retailers that the EBT system was again processing SNAP EBT transactions. Like the negligence claim, this part of Wal-Mart's negligent misrepresentation claim seeks to make Xerox the guarantor of all transactions processed by all retailers for the period the mini-switch was open. This open-ended liability is what the economic loss rule seeks to prevent. *See id.* at 238–40. Accordingly, we conclude Wal-Mart's negligent misrepresentation claim is barred to the extent it seeks to make Xerox liable for damages from the premature opening of the mini-switch.

The remainder of the negligent misrepresentation claim concerns Wal-Mart's damages flowing from Xerox's employees' express representations to Wal-Mart that the transaction-processing system was functioning and Xerox's employees' premature instructions to Wal-Mart's and First Data's employees to send Wal-Mart's store-and-forward transactions through the system for processing. This part of the negligent misrepresentation claim does not create open-ended liability as it is limited to the damages from Wal-Mart's sending transactions in response to those representations. The claim would not make Xerox the guarantor of all retailers' transactions. Instead, the claim seeks to make Xerox liable only for Wal-Mart's damages flowing from Wal-Mart's following Xerox's employees' express instructions to Wal-Mart. There is no evidence or inference that any other retailers received these representations. We conclude the concern for indeterminate and disproportionate liability does not support application of the economic loss rule.

There remains the rationale for the economic loss rule of deference to contract. As discussed above, the states' contracts with Xerox have provisions for Xerox's liability for retailers' losses in the event of the failure of the SNAP EBT transaction processing system. Our imposing tort liability on Xerox outside of that contractual and regulatory framework would unnecessarily disrupt that system of agreements and regulations. If the regulations and the contracts of the sixteen states with Xerox do not impose liability on Xerox for its losses, this Court has no business creating protections for Wal-Mart and imposing liability against Xerox when those states declined to create such protections and liability. *See LAN/STV*, 435 S.W.3d at 248 ("We see no reason not to apply the economic loss rule to achieve this end," meaning that a duty to avoid a loss is unlikely to be recognized in tort.) As the supreme court observed, quoting the Restatement (Third), "Where contracts might readily have been used to allocate the risk of a loss, . . . a duty to avoid the loss is unlikely to be recognized in tort . . . because courts prefer, in general, that economic losses be allocated by contract where feasible." *Id.* (quoting RESTATEMENT (THIRD) § 3 cmt. f)).

We conclude the economic loss rule bars Wal-Mart's negligent misrepresentation claim.

## CONCLUSION

We reverse the trial court's judgment to the extent that it grants Xerox's first motion for summary judgment "as to the EBT transactions that were denied in

connection with the October 12, 2013 Outage because the EBT benefit recipient either lacked sufficient funds in their accounts to cover their purchases or because the EBT benefit recipient entered an invalid PIN number." In all other respects, we affirm the trial court's judgment. We remand the cause to the trial court for further proceedings consistent with this opinion.


181421f.p05

/Robert D. Burns, III//
ROBERT D. BURNS, III
CHIEF JUSTICE



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

WAL-MART STORES, INC.; WAL-MART STORES EAST, LP; WAL-MART LOUISIANA, LLC; SAM'S EAST, INC., AND SAM'S WEST, INC., Appellants

No. 05-18-01421-CV        V.

XEROX STATE & LOCAL SOLUTIONS, INC. A/K/A/, F/K/A ACS STATE & LOCAL SOLUTIONS, INC., Appellee

On Appeal from the 44th Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-15-13629. Opinion delivered by Chief Justice Burns. Justices Nowell and Garcia participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** the trial court's judgment to the extent that it grants appellee Xerox State & Local Solutions, Inc.'s first motion for summary judgment "as to the EBT transactions that were denied in connection with the October 12, 2013 Outage because the EBT benefit recipient either lacked sufficient funds in their accounts to cover their purchases or because the EBT benefit recipient entered an invalid PIN number." We **AFFIRM** the trial court's judgment in all other respects. We **REMAND** the cause to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 12th day of December 12, 2024.